UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL V. HALL,<br>            Petitioner,<br>   v.<br>JEFF LYNCH,<br>            Respondent. | Case No. 21-cv-03352-JD<br><br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 22 |

Nathaniel Hall, a pro se state prisoner, filed a habeas petition under 28 U.S.C. § 2254. Respondent filed a motion to dismiss on the grounds that the petition is barred by the statute of limitations and one of the claims is not cognizable on federal habeas review. Hall filed an opposition, and respondent filed a reply. The motion is granted.

**STATUTE OF LIMITATIONS**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on petitions for writs of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging noncapital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

The one-year period generally will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by United States Supreme Court Rule 13 expires. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final 90 days after the California Supreme Court denied review); *Bowen*, 188 F.3d at 1159 (same).

**Background**

In June 2012, a jury convicted Hall of aggravated mayhem, corporal injury on a cohabitant, resisting a police officer and three misdemeanor counts of violating a protective order. Motion to Dismiss ("MTD") Ex. 1 at 1. In 2013, the California Court of Appeal affirmed the judgment and on March 19, 2014, the California Supreme Court denied review. *Id*. Ex. 1 at 2; Ex 2.

On April 7, 2015, Hall filed a habeas petition in Santa Clara County Superior Court. *Id*. Ex. 3. The petition included a declaration from the victim in the case, Ashley Flores, that was dated January 22, 2015, and recanted her trial testimony. *Id*. On December 22, 2015, the superior court denied the petition as untimely and meritless. *Id*. Ex. 4. The superior court rejected the claim that the declaration amounted to new evidence that undermined the prosecution's case, finding that the victim "had already similarly recanted during Hall's trial." *Id*. at 5.

Hall filed a habeas petition in the California Supreme Court on June 11, 2016, which was denied on August 31, 2016, with citations to *People v. Duvall*, 9 Cal. 4th 464, 474 (1995); *In re Dexter*, 25 Cal. 3d 921, 925-26 (1979); and *In re Swain*, 34 Cal. 2d 300, 304 (1949). *Id*. Ex. 5.

On August 5, 2016, Hall filed another petition in the California Supreme Court, that was summarily denied on August 31, 2016. *Id*. Ex. 6. Between August 31, 2016, and April 1, 2021, Hall filed two additional habeas petitions in the California Supreme Court, three petitions in the California Court of Appeal and six petitions in various superior courts. *Id*. Exs. 7-23.

Hall filed this federal petition on April 29, 2021. Dkt. No. 1.

**Discussion**

Hall had ninety days from March 19, 2014, when the state high court denied review, to file a petition for writ of certiorari with the United States Supreme Court. *See Bowen*, 188 F.3d at 1159. He did not do so. As a result, the one-year limitations period began to run on June 18, 2014, the day after the ninety-day deadline expired, giving Hall until June 17, 2015, to file his federal habeas petition. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (calculating AEDPA's one-year limitations period according to Federal Rule of Civil Procedure 6(a)).

The one-year statute of limitations is tolled under § 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for the purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (citing *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). In *Pace*, the Supreme Court held that "[b]ecause the state court rejected petitioner's [postconviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under §2244(d)(2)." *Id.* at 413.

Hall filed one state habeas petition before the expiration of the statute of limitations. The petition to the Santa Clara County Superior Court was denied as untimely. Hall is not entitled to tolling for this petition. *See Pace* at 413. The other state habeas petitions were filed after the expiration of the statute of limitations, and so do not provide a basis for tolling. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed). Consequently, Hall's petition is untimely unless he is entitled to an exception based on a later start date for the statute of limitations, equitable tolling or actual innocence.

**Section 2244(d)(1)(D)**

Hall presents two claims in this petition: (1) newly discovered evidence demonstrates a violation of due process and his actual innocence; and (2) his trial counsel was ineffective. Hall

3

says that the newly discovered evidence consists of a declaration from the victim, Ashley Flores, in 2015, and emails sent between his mother and trial counsel prior to the 2012 trial. Under § 2244(d)(1)(D), the one-year limitations period starts on the date on which "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The time begins "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2000) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)) (remanding case to district court for further factual findings concerning determination of when, with exercise of due diligence, petitioner could have discovered facts to support prejudice prong of ineffective assistance of counsel claim).

While the underlying facts of a conviction are generally not relevant for a motion to dismiss on the statute of limitations, the facts here are in issue. As the California Court of Appeal determined in pertinent part:

> Ashley Flores had been appellant's girlfriend for three years and had lived with appellant for approximately six months when the incident underlying this case occurred. On August 6, 2010, Flores and appellant consumed a lot of alcohol at a couple of bars, so much so that Flores was intoxicated. She argued with appellant because appellant had suggested that she was flirting with another man.
>
> When Flores and appellant returned home, the fighting continued. Flores left the residence and went to her car because she was tired of arguing. She moved her car to a parking spot on the street as she planned to sleep in the car. Repeatedly, appellant called her on her cellular telephone; she did not answer.
>
> When she awoke, Flores went back to the residence. She noticed that appellant had thrown her television to the floor and had spat on it; appellant was packing his backpack. They argued again. Flores went to pour a cocktail, but appellant knocked it out of her hand. Flores went to the bathroom to take a shower and then returned to the bedroom. She yelled at appellant. Flores testified that she grabbed appellant's neck and pushed him on the bed. Appellant grabbed Flores's head in both hands and bit off her left eyelid; there was a lot of blood. Flores ran to the bathroom to see what had happened to her eyelid. Appellant followed her and then spat out the severed eyelid at Flores.
>
> Flores tried to leave the apartment, but appellant prevented her from going. Appellant threw her to the ground and kicked her; he pulled her hair. Eventually, Flores ran to the car. Appellant pushed her into the passenger seat and he got into the driver's seat and drove away.

4

Flores was wearing only a top when she fled the residence; she wanted to get to the hospital and did not think about putting on her pants. Appellant drove erratically; Flores was frightened because appellant was enraged. Later, she told the police that appellant threatened to kill them both.

When appellant stopped the car at a stop sign Flores grabbed the keys and threw them out of the window. She tried to get out of the car, but appellant grabbed her and held her head against his chest. Almost immediately, officers arrived on the scene; they pulled appellant from the car. According to Flores, appellant would not get out of the car when the officer ordered him so to do. Officers summoned an ambulance to take Flores to the hospital. She told the officers that appellant was out of control.

Paramedics transported Flores to Valley Medical Center. She told the nursing staff that her boyfriend assaulted her. That evening she had surgery to repair the traumatic eye injury she had sustained. Her head and stomach hurt after the incident. Flores had bruising on her left forearm from the attack as well as a bruise above her right elbow.

. . . .

As a result of appellant's attack, a restraining order was issued to protect Flores. Nevertheless, appellant telephoned her on August 10, 2010. Flores told appellant she thought he was going to kill her on the night he bit her. Appellant accused her of attacking him, but she denied that she had so done. Appellant telephoned her again on September 2, 2010. In this conversation, again, appellant suggested that Flores choked him; again she denied the allegation. Appellant telephoned Flores again on September 20, 2010. Flores received between 10 and 20 letters from appellant.

Flores admitted that there had been prior incidents of domestic violence. On September 9, 2009, appellant punched Flores twice in the left eye. On another occasion, as Flores was recovering from broken blood vessels in her eye, appellant pushed his thumb into her eye. In May 2010, appellant bit her stomach and breast.

. . . .

San Jose Police Detective Duane Tuell spoke with Flores on August 10, 2010, two days after the attack in order to obtain a statement. Detective Tuell along with Detective Gonzalez interviewed Flores at her parents' residence. They recorded their conversation with her. Flores never said that she used any physical violence against appellant; rather, it was appellant that initiated the violence. Flores said that appellant pushed her into the passenger seat of her car. Flores complained of pain to her stomach and head. Detective Tuell could see bruising on Flores's arms.

Detective Tuell spoke with Flores by telephone on August 25, 2010. Flores confirmed that she did not choke or put her hands on appellant. Flores told him that appellant had expressed the desire to bite flesh. Flores confirmed to him that she remembered the details of the incident. On October 26, 2010, Flores telephoned Detective Tuell and

5

|   |   |
|---|---|
| 1 | said that she might have choked appellant, but she was not trying to hurt him. |
| 2 | . . . . |
| 3 | Officer Cleaver testified that when he arrived at the scene he saw appellant lying flat on his stomach with his hands cuffed behind his back. . . . |
| 5 | Officer Cleaver went to talk to Flores. He saw that her face was covered in blood. She was crying and said, repeatedly, "Don't let me lose my eye." According to Officer Cleaver, Flores told him that appellant threw her big screen television onto the ground; that the first physical contact between her and appellant occurred when appellant grabbed her head with both hands and bit her; and that appellant kicked her in the head and stomach. Flores never told him that she choked appellant. Flores said that after she ran from the residence, appellant followed her to her car, pushed her from the driver's seat into the passenger seat and drove away. Flores told him that there were prior unreported incidents of domestic violence. |
| 11 | . . . . |
| 12 | Appellant said that he had a vague recollection of biting Flores's eyelid, but denied spitting the eyelid at Flores. He denied discussing an interest in tasting blood or flesh. He acknowledged that he had violated the no contact order by contacting Flores; and admitted that when he was in the back of the patrol car he said, "'I'll never have to see that bitch again. Next time, I'll shoot her Goddamn eye out of her face.'" Appellant agreed that in the entire time he was in the back of the patrol car he never said that he was acting in self defense when he bit Flores. |
| 17 | Appellant admitted that he had fractured Flores's eye socket on a prior occasion. He acknowledged that when he telephoned Flores he asked her to show him mercy at least four or five times. |

*People v. Hall*, No. H038706, 2013 WL 6780572, at *1-5 (footnotes omitted).

Hall maintains that the newly discovered evidence is the declaration by Ashley Flores, the victim, that was signed on January 22, 2015. Dkt. No. 30 at 2-4. Hall does not provide the date he discovered the declaration, but states it was in 2015. Opposition at 2. A copy of the declaration was part of Hall's habeas petition to the superior court filed on April 7, 2015. MTD, Ex. 3. The declaration states that Hall was convicted based on her statements that were not accurate and that she was deterred from testifying truthfully at trial. Dkt. No. 30 at 2-4. She alleges that the detective and assistant district attorney involved pressured her to testify to statements that were not factual. She states that while Hall bit her eyelid and tore the skin, she is sure that his intent was not to mutilate her and that he was merely reacting to her actions: placing her hands around

6

his neck and not allowing him to breathe. She states that when she first spoke to police, she was angry and heartbroken, felt betrayed and wanted Hall to suffer. Later, she contends that the detective and assistant district attorney threatened and pressured her to not change her testimony. *Id*.

The superior court denied the habeas petition of the claim based on Flores' declaration. MTD, Ex. 4. The court noted that during the trial Flores recanted her previously stated version of the events surrounding her injuries. *Id*. The court concluded that the declaration was not newly discovered evidence. *Id*.

A review of the trial record confirms that the Flores declaration did not contain newly discovered evidence, and simply described her trial testimony. On June 6, 2012, on direct examination, Flores testified that she was the one who initiated physical contact during the argument by grabbing Hall around the neck and choking him. MTD, Ex. 24, Reporter's Transcript at 272-73, 275-76. She was on top of Hall choking him when he bit her eyelid. *Id*. at 275. She testified that she was enraged and was trying to scare him. *Id*. at 278. The jury heard other trial testimony regarding what Flores initially told police about the incident that differed from what she testified to at trial. Flores initially told police that she had not touched Hall at any point during the argument and that the first physical contact was when Hall bit her. *Id*. at 281, 327-28. She acknowledged that her statements to police were not true. *Id*. at 281. Flores had also initially denied choking Hall. *Id*. at 327-28. Flores also testified at a preliminary hearing that she had received compensation for her eye surgery and relocation but that she was required to testify and that she had to tell the truth. MTD, Ex. 25, Clerk's Transcript at 77, 79-80.

The trial testimony demonstrates that Hall was aware of the factual predicate of Flores' declaration at trial. The declaration is not new evidence; therefore, he is not entitled to a later start date of the statute of limitations. Even assuming Hall was entitled to a later start of the statute of limitations, this federal petition is still untimely. Hall was aware of Flores' declaration on April 7, 2015, when he sent it as an exhibit to the superior court. This federal petition was filed in 2021. Even if the statute of limitations commenced in 2015, when Hall obtained the declaration, this federal petition is untimely by many years. Hall's state petitions filed after 2015 were denied as

1   untimely, so there would be no statutory tolling, and there was a period of nearly two years when

2   Hall filed no state habeas petitions.  A delayed start of the statute of limitations would still result

3   in the petition being dismissed as untimely.

4         In Hall's second claim, he contends that his mother and trial counsel exchanged emails

5   before the 2012 trial, and the subject matter of the emails demonstrates ineffective assistance of

6   counsel.  Respondent argued in the motion to dismiss that Hall had not provided any date when he

7   discovered these emails or why he was unable to discover them with due diligence by asking his

8   mother or trial counsel.  Hall failed to address these issues in his opposition.  Because Hall could

9   have easily discovered this evidence, he is not entitled to a later start date of the statute of

10  limitations.

11        To the extent that Hall suggest that he is entitled to equitable tolling, he has not met his

12  burden.  In the original petition filed in this Court, Hall stated that he delayed filing "due to mental

13  drugs and deterioration."  Dkt. No. 1 at 7.  In the motion to dismiss, respondent set forth the legal

14  standard for equitable tolling based on mental impairment and noted that Hall filed approximately

15  thirteen pro se state habeas petitions between 2015 and 2021, demonstrating that he had the mental

16  capacity to file petitions.  In his opposition, Hall does not address respondent's argument and only

17  states that he was in the Enhanced Outpatient Program for mental health treatment and was under

18  psychological medications.  Opposition at 1-2.  Hall is not entitled to equitable tolling because he

19  has failed to present sufficient arguments to warrant such tolling.  Moreover, the filing of so many

20  state habeas petitions during the time he alleges he was impaired, demonstrates that he had the

21  mental capacity to understand the need to timely file and the ability to effectuate the filing.

22  **Actual Innocence**

23        In the first claim of the petition, Hall argues that he is actually innocent and that his

24  innocence overcomes the expiration of the statute of limitations.  To the extent Hall seeks to

25  present a freestanding claim of actual innocence, even if it was timely, such a claim is not

26  cognizable.  "Claims of actual innocence based on newly discovered evidence have never been

27  held to state a ground for federal habeas relief absent an independent constitutional violation

28  occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400

(1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact." *Id*. The Ninth Circuit has held that it is "still an open question" whether federal habeas relief is available based on a freestanding claim of actual innocence. *Taylor v. Beard*, 811 F.3d 326, 334 (9th Cir. 2016) (en banc) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 384 (2013)).

Nor has Hall shown that his petition overcomes the statute of limitations due to his assertions that he is actually innocent. A federal court may hear the merits of successive, abusive, procedurally defaulted or untimely claims if the failure to hear the claims would constitute a "miscarriage of justice." *See McQuiggin*, 569 U.S. at 391-93 (holding that miscarriage of justice (actual innocence) showing applies to claims filed after AEDPA statute of limitations has run, as well as to successive, abusive and procedurally defaulted claims).

By the traditional understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. at 543-44. However, the Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 & n.32.

> [I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim.

*Id*. at 316. The required evidence must create a colorable claim of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *Id*. at 321. It is not enough that the evidence show the existence of reasonable doubt, petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." *Id*. at 329.

Hall has failed to meet this exceptionally high burden. As discussed above, the jury was aware of the information that Hall maintains is new evidence. The jury heard evidence about the victim's changing story, but still found Hall guilty. Hall was also aware, based on Flores' testimony at a preliminary hearing, that she had received compensation for her eye surgery and relocation and that she was expected to testify. Hall has not offered any new reliable evidence demonstrating that no reasonable juror would have found him guilty.

**CONCLUSION**

1. Respondent's motion to dismiss (Dkt. No. 22) is **GRANTED** and this case is **DISMISSED**. The Clerk is requested to close this case.

2. A certificate of appealability ("COA") will not issue because this is not a case in which "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court declines to issue a COA regarding the procedural holding and the underlying claims of the petition.

**IT IS SO ORDERED.**

Dated: April 19, 2022

JAMES DONATO
United States District Judge